NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DIANE L. BEATREZ,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2010-3145

---

Petition for review of the Merit Systems Protection Board in case no. CB1215080015-T-1.

---

Decided: March 25, 2011

---

DIANE L. BEATREZ, Hughesville, Maryland, pro se.

CALVIN M. MORROW, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were JAMES M. EISENMAN, General Counsel, and KEISHA DAWN BELL, Deputy General Counsel.

---

Before PROST, SCHALL, and MOORE, *Circuit Judges.*

PER CURIAM.

Diane L. Beatrez petitions for review of the final decision of the Merit Systems Protection Board ("Board") holding that she and another Human Resources Specialist, Richard Lee, had violated 5 U.S.C. § 2302(b)(6) by intentionally assisting in the granting of an illegal preference for employment to a third employee. *Special Counsel v. Richard F. Lee*, 114 M.S.P.R. 57 (2010) ("*Final Decision*"). In the *Final Decision*, the Board reversed the initial decision of the administrative judge that Ms. Beatrez and the other employee had not violated § 2302(b)(6). *See Special Counsel v. Richard F. Lee, Diane L. Beatrez*, Nos. CB1215080014-T-1, CB1215080015-T-1 (March 13, 2009) ("*Initial Decision*"). The Board imposed upon Ms. Beatrez the penalty of a ten-day suspension without pay. *Final Decision* at 79. Because the Board overturned the administrative judge's credibility findings without providing any sound reason for its contrary evaluation of the evidence with respect to Ms. Beatrez, we *reverse-in-part.*

BACKGROUND

I

This case grows out of the efforts of the U.S. Coast Guard Regional Examination Center ("REC") in Los Angeles, California, to fill a Supervisory Merchant Marine Specialist position. The process began when Commander ("CMDR") Laura O'Hare, the Chief of REC in Los Angeles, contacted the Coast Guard's Human Resources Department ("HR") in Washington, D.C., and requested assistance in filling the GS-1801-11 position. Management believed that there were internal local candidates

that were particularly qualified for this position because of their current experience in the REC. Apparently CMDR O'Hare wanted the opportunity to consider these employees. *Initial Decision* at 2. On January 20, 2004, an HR specialist in Washington, D.C., Jean House, issued parallel GS-11 vacancy announcements for the position: (1) a delegated examining unit ("DEU") announcement that was open to all qualified U.S. citizens and (2) a merit promotion announcement that was open to all "status eligibles" (i.e., present Coast Guard employees). Eric Woodson, a local REC employee, who held the GS-0986-08 position of Senior Legal Instrument Examiner, applied under the merit promotion announcement. Although Mr. Woodson was already performing many of the tasks associated with the GS-1801-11 position, he was not referred because he lacked the required time in grade. *Id.*

CMDR O'Hare was dissatisfied with the original set of announcements, which she believed had failed to attract any well-qualified local candidates. *Id.* at 3. CMDR O'Hare contacted field HR specialist Richard F. Lee specifically to inquire why Mr. Woodson had not been referred. Like CMDR O'Hare, Mr. Lee was serving in California. He forwarded CMDR O'Hare's request to Ms. House in Washington, D.C., requesting her advice about reopening the vacancy announcements to meet CMDR O'Hare's needs. On March 1, 2004, Ms. House instructed Mr. Lee to "have Commander O'Hare talk about lack of adequate candidates." *Id.* at 4. The record indicates that CMDR O'Hare followed this advice, and the referral certificate bears a handwritten annotation by CMDR O'Hare, stating that she wanted to re-advertise the job "[b]ecause of a lack of sufficient, well-qualified candidates." *Id.*

On March 4, 2004, the vacancy was advertised a second time, with no substantive change from the first announcements. In other words, instead of being drafted to include supposedly qualified candidates from the local REC such as Mr. Woodson, the second set of announcements was again advertised only at the GS-11 level. *Id.* After the issuance of the second set of announcements, the staffing assignment was transferred from Ms. House to Ms. Beatrez, who was also an HR specialist in the Washington, D.C. office. Thus, Ms. Beatrez did not become involved until late in the process. In the *Initial Decision*, the administrative judge described the totality of Ms. Beatrez's actions as follows:

> On April 2, 2004, Ms. Beatrez notified Mr. Lee that she had been told [by Ms. House] "the reason the job was re-advertised was to try to reach Mr. Woodson." Ms. Beatrez then stated that she was unable to qualify Mr. Woodson at the GS-11 level, and asked if Mr. Lee wanted the qualified applicants incorporated with the prior list.

*Id.* at 4-5. Mr. Lee was the one who notified CMDR O'Hare about the results from the second set of vacancy announcements. He stated, "They did not find Eric [Woodson] qualified for the position based on his resume and how he responded to the KSAs. My recommendation if you want to consider him is to cancel and advertise the position as a GS-9 with potential to GS-11." CMDR O'Hare then responded to Mr. Lee that she wanted the position re-announced as a "GS-9/11 to expand the pool of qualified applicants with specific licensing experience. Please limit the solicitation to all current and former federal employees, and limit to LA/LB [Los Angeles/Long Beach] local area." *Id.* Mr. Lee passed this request on to Ms. Beatrez, instructing her to re-announce the position

as a GS-09/11 merit promotion vacancy with the area of consideration limited to the Los Angeles commuting area. *Id.* Thus, Ms. Beatrez did not provide advice about restructuring the vacancy announcement but merely published the new announcement designed to expand the pool of qualified applicants with specific licensing experience. In its final decision, the Board described Ms. Beatrez's activities in a similar manner. *Final Decision* at 62-63.

The position was re-announced on May 20, 2004, as a merit promotion position limited to the local commuting area. On June 17, 2004, CMDR Christopher Hogan relieved CMDR O'Hare as the Chief of REC. After considering the applicants from all three sets of vacancy announcements, CMDR Hogan conducted interviews and selected Mr. Woodson for the position. *Initial Decision* at 5.

## II

In May of 2008, the Office of Special Counsel ("OSC") lodged separate complaints with the Board seeking disciplinary action against Ms. Beatrez and Mr. Lee, alleging that they had violated 5 U.S.C. § 2302(b)(6) by granting a preference or advantage to Mr. Woodson for the purpose of improving his prospects of obtaining a promotion to a supervisory position. The complaints were consolidated, and the case proceeded to a hearing before the administrative judge. Following the hearing, the administrative judge ruled that OSC had failed to prove by a preponderance of the evidence that either Ms. Beatrez or Mr. Lee had violated 5 U.S.C. § 2302(b)(6), and the administrative judge dismissed OSC's complaint. *Initial Decision* at 12, 16.

The administrative judge began his analysis by stating, "[T]he essential facts are not in dispute; only the motives of those involved are in question." *Id.* at 6. He then proceeded to separately examine the evidence relating to intent as it pertained to Ms. Beatrez and Mr. Lee respectively. Regarding Ms. Beatrez's involvement in the case, the administrative judge found that the purpose surrounding the reposting of the announcements was "to correct the error in the initial announcements that excluded well qualified local candidates such as Mr. Woodson." *Id.* at 7-8. The administrative judge pointed to copious testimony supporting the need to consider internal local candidates. For example, the administrative judge stated that he found credible the testimony of CMDR Hogan, who explained that the position requires significant knowledge and that someone coming from outside the Coast Guard or outside the REC would have difficulty getting up to speed quickly. *Id.* at 8. The administrative judge also found credible Cynthia Nelson-Possinger, Ms. Beatrez's supervisor, who likewise testified that the documentation examiners within REC—like Mr. Woodson—would have the most relevant experience for the advertised position. *Id.* The administrative judge also pointed to testimony supporting the practice of re-advertising positions when the initial list did not satisfy management's needs. For example, the administrative judge considered the testimony of Ronald Kogut, the Chief of Civilian Personnel at the Coast Guard. In the administrative judge's view, Mr. Kogut was credible when he explained that if a candidate list was inadequate to meet the needs of an organization, it was "common practice" in both the Coast Guard and the government as a whole to cancel the announcement. The administrative judge also found credible Mr. Kogut's testimony that redesigning the position to create a GS-09 position was in keeping with common practice. *Id.* The administrative judge con-

cluded that "it would have been a legitimate and appropriate act to re-announce the position if it was for the purpose of ensuring that management was able to consider the widest field of eligible candidates with the greatest potential to have the skills and knowledge relevant to the position being advertised." *Id.* The administrative judge further concluded that "[i]t would also have been a legitimate and appropriate act, in keeping with . . . merit principles, to design the position as a GS-09/11 in order to ensure that recruitment could reach qualified individuals from appropriate sources, including internal candidates already employed at the REC with knowledge in their field." *Id.* at 9.

The administrative judge turned next to the question of whether Ms. Beatrez had violated § 2302(b)(6) by cancelling the second set of announcements and re-announcing the position for the third time. In considering Ms. Beatrez's actions, the administrative judge started from the premise that "a lack of sufficient qualified candidates in the pool is a legitimate reason for cancelling a vacancy announcement." The administrative judge believed this was the true motive for re-announcing the position. *Id.* He found that the second set of announcements was cancelled because, according to Ms. Beatrez, when she looked at the case "and saw that Mr. Woodson didn't qualify, and I saw that there were just a limited number of applicants, most of which were applicants under the [DEU] or open competitive announcement, I made an assessment that the position was advertised in error, so I cancelled that." *Id.* There was only one new applicant under the merit promotion list, and Ms. Beatrez explained that the second set of announcements "wasn't going to meet [management's] need to have more names." *Id.*

The administrative judge noted that the testimony against Ms. Beatrez consisted of her admission that she had been told by Ms. House that CMDR O'Hare wanted to "try and reach Mr. Woodson." *Id.* at 10. The administrative judge reasoned, however, that "given there had been only one new applicant under the second merit promotion announcement, and that the Coast Guard apparently graded its only qualified internal candidates at the GS-07 and GS-08 levels, Ms. Beatrez would have been singularly incompetent if she had not thought that an announcement at the GS-09/11 level made sense." *Id.* at 10-11. After noting Ms. Beatrez's testimony that she thought the second announcements were in error and the testimony of Ms. Nelson-Possinger and Mr. Kogut that they did not believe Ms. Beatrez had done anything improper, the administrative judge stated:

> I share the Coast Guard's belief that the OSC's approach in Ms. Beatrez's case would make it difficult for well-intentioned HR staff to help management exercise the full range of available options in a recruitment action. While it would have been preferable if the HR staff had recognized sooner that only a GS-09/11 announcement would give the agency's internal candidates an opportunity to be considered for the position, Ms. Beatrez was not involved sooner. The other HR staff's failure to provide effective advice earlier should not be allowed to prevent Ms. Beatrez from assisting management by providing an appropriate announcement once the weakness in their earlier approach had been discovered.

> Because I find that Ms. Beatrez did the proper thing and canceled the ineffective announcement with a re-announcement designed to catch a

broader pool of well-qualified candidates, the OSC has failed to prove its case against Ms. Beatrez by a preponderance of the evidence.

*Id.* at 12.

In the *Final Decision*, the Board granted OSC's petition for review and reversed the *Initial Decision* with respect to both Ms. Beatrez and Mr. Lee. *Final Decision*, 114 M.S.P.R. at 74. The Board acknowledged that normally it must defer to the credibility determinations of an administrative judge when they are based upon the observation and demeanor of witnesses testifying at a hearing. *Id.* at 66. The Board stated, however, that it could overturn credibility determinations "when the [administrative judge's] findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole." *Id.* Continuing, the Board stated that although the administrative judge had not ignored evidence that would support a finding of preferential treatment, his findings and credibility determinations were "nevertheless inconsistent with the weight of the documentary evidence and do not reflect the record as a whole." *Id.* at 67. In the Board's view, the administrative judge "explained away serious contradictions" between direct testimony favorable to Ms. Beatrez and Mr. Lee and other less favorable evidence in the record, thereby "crafting an improbable account of the events leading up to Mr. Woodson's appointment to the vacant position." *Id.* In that regard, the Board stated:

The record includes a fairly significant paper trail of email messages described above, which were written or received by CMDR O'Hare, Lee and Beatrez, and which clearly document CMDR O'Hare's desire to select Woodson for the position.

When we consider the totality of the evidence, we find that these messages, together with some of the material testimony, persuasively show that CMDR O'Hare was indeed seeking to grant Woodson a preference not authorized by law, rule, or regulation. CMDR O'Hare's email messages specifically identify Woodson and no other potential candidate for the vacant position. Between these blatant references to Woodson, and the documentation and direct testimony regarding the assistance forthcoming from the respondents, a pattern of cooperation between the respondents and CMDR O'Hare emerges in support of CMDR O'Hare's efforts to grant an illegal preference to Woodson.

*Id.* at 68.

As far as Ms. Beatrez was concerned, the Board focused on the following points. First, the Board concluded: "Beatrez was well-aware of CMDR O'Hare's intent to reach Woodson, and she reviewed Woodson's application and qualifications first, immediately after the second set of vacancy announcements closed. She found that he was not qualified for the position as it was advertised and told Lee accordingly." *Id.* at 69. The Board further noted that Ms. Beatrez told Mr. Lee that Mr. Woodson was not able to qualify at the GS-11 level because he lacked time in grade. *Id.* She testified that Coast Guard management hoped that Mr. Woodson would qualify under the new announcement. *Id.* at 70-71. Second, the Board indicated that Ms. Beatrez and Mr. Lee "advised CMDR O'Hare regarding the specific language to use to request a cancellation of the second set of vacancy announcements and a re-posting of the position with a lower grade of GS-9/11, which would allow Mr. Woodson to be considered." *Id.* at

69. Third, the Board pointed to what it viewed as the "carefully tailored nature of the third and final vacancy announcement that virtually ensured that the position qualifications would allow Woodson to be incorporated into the pool of qualified candidates." *Id.* at 70. The Board viewed the third announcement as possibly precluding candidates from other REC facilities from consideration "even though they were a precise match for the position in terms of their experience." *Id.* Finally, the Board acknowledged that "the strongest evidence of intent points not to [Mr. Lee and Ms. Beatrez], but to CMDR O'Hare. *Id.* at 72. It nonetheless concluded that "given the rather blatant intention of granting a preference to Woodson that CMDR O'Hare's communications expressed to [Mr. Lee and Ms. Beatrez], we also cannot ignore the actions of [Mr. Lee and Ms. Beatrez], who are HR professionals, in intentionally facilitating an obvious violation of section 2302(b)(6)." *Id.* Viewing Ms. Beatrez's and Mr. Lee's conduct as having aided and abetted a violation of § 2302(b)(6) by CMDR O'Hare, the Board found that OSC had proved by a preponderance of the evidence that both HR specialists violated § 2302(b)(6) "when they intentionally assisted CMDR O'Hare in granting an illegal preference for employment to Woodson." *Id.* at 74.

Ms. Beatrez timely petitioned for review of the Board's final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

"Our review of Board decisions is limited. We may only reverse a Board decision if we find the decision to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures

required by law; or unsupported by substantial evidence." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1312 (Fed. Cir. 2010) (citing 5 U.S.C. § 7703(c)). While the Board is free to substitute its judgment for that of an administrative judge, the Board is not free to overturn an administrative judge's credibility findings merely because it disagrees with those findings. *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1299 (Fed. Cir. 2002). Where an administrative judge is able to observe the demeanor of a testifying witness and, as a result, the administrative judge's findings are explicitly and implicitly based on the demeanor of the witness, the Board may not simply disagree with the administrative judge's assessment of credibility unless it articulates sound reasons for its contrary evaluation of the testimonial evidence. *Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1304-05 (Fed. Cir. 2008) (citing *Haebe*, 288 F.3d at 1300). The Board may satisfy this "more stringent standard for overturning demeanor-based credibility determinations" by providing "sound reasons, based on the record" for overturning the administrative judge's conclusions. *Long v. Soc. Sec. Admin.*, No. 2010-3108, slip op. at 7-8, 2011 WL 915175 (Fed. Cir. Mar. 14, 2011) (affirming the Board's overturning of credibility determinations where the Board satisfied the more stringent standard). "[I]f the [Board]'s reasons for overturning demeanor-based credibility determinations are not sufficiently sound, its decision does not survive substantial evidence review." *Haebe*, 288 F.3d at 1301.

Ms. Beatrez raises several arguments on appeal. We find it necessary to address only one of them: her contention that the Board erred in overturning the administrative judge's findings with respect to her intent. She argues that her actions were based on her belief that there was a legitimate management interest in expanding the announcement so that well-qualified merit promotion

candidates at the place where the vacancy occurred could be considered. She argues that the Board erred because at worst, the evidence was as consistent with her having acted with an innocent intent as it was with her not having done so.

Both the administrative judge and the Board recognized that this case turns on intent. The administrative judge found that Ms. Beatrez and Mr. Lee did not intend to violate § 2302(b)(6) by granting an illegal preference to Mr. Woodson. This finding was supported by the testimony of Ms. Beatrez, CMDR Hogan, Ms. Nelson-Pottinger, and Mr. Kogut, all of whom the administrative judge found credible. Noting that the agency may rely on circumstantial evidence to establish intent, the Board took the position that the HR specialists' culpability was undermined by CMDR O'Hare's emails and by what it concluded Ms. Beatrez and Mr. Lee knew about CMDR O'Hare's wishes. According to the Board, the administrative judge failed to take these considerations into account.

The Board's reasons for substituting its own credibility determinations for that of the administrative judge are not sufficiently sound to justify overturning the administrative judge's finding as to Ms. Beatrez's intent. First, we note that while the Board's opinion addresses both HR specialists' culpability, the bulk of the considerations it points to for overturning the administrative judge pertain to Mr. Lee rather than Ms. Beatrez. For example, the Board stated that both Mr. Lee and Ms. Beatrez advised CMDR O'Hare regarding the language of the final vacancy announcement. *Id.* at 69. The testimony does not support this assertion. Rather, it was Mr. Lee alone who emailed CMDR O'Hare and recommend cancelling the second set of vacancy announcements and advertising the position as a GS-09 with potential to GS-11. After receiv-

ing Mr. Lee's email, CMDR O'Hare emailed Mr. Lee and directed him to re-announce the position as a "GS-9/11 to expand the pool of qualified applicants with specific licensing experience." She also asked him to limit the announcement to the local commuting area. Mr. Lee passed this information to Ms. Beatrez, stating that she should re-announce the position as a GS-09/11 merit promotion vacancy limited to the Los Angeles commuting area. There is nothing in either the administrative judge's or the Board's decision indicating that Ms. Beatrez actually advised CMDR O'Hare regarding the language of the final vacancy announcement.[1]

The Board further points to a "fairly significant paper trail of email messages" that "clearly document CMDR O'Hare's desire to select Woodson." *Id.* at 68. The Board concluded that the HR specialists intentionally facilitated CMDR O'Hare's blatant attempt to violate § 2302(b)(6). The examples discussed in the Board opinion demonstrating CMDR O'Hare's blatant intent, however, are all emails between CMDR O'Hare and Mr. Lee. There is nothing in either the administrative judge's or the Board's decision indicating that Ms. Beatrez, who was located in Washington, D.C., had any direct contact with CMDR O'Hare. On the other hand, the testimony supports that Mr. Lee and CMDR O'Hare had frequent face-to-face conversations as well as email discussions at every stage of the process. In contrast, all of Ms. Beatrez's limited dealings were all with Mr. Lee.

---

[1]    Thus, Ms. Beatrez did not advise regarding the language of any of the vacancy announcements. The first and the second set of announcements were issued before the staffing assignment for the action was transferred to Ms. Beatrez.

Beyond the emails discussing CMDR O'Hare's desire to be able to consider Mr. Woodson and the advice provided regarding the vacancy announcements, the Board points to the "carefully tailored nature" of the third and final vacancy announcement. *Id.* at 70. While the announcement expanded the experience level for potential applicants by advertising the open position at both the GS-09 and GS-11 levels, it limited consideration of applicants to the local commuting area. The Board expressed concern that such specifications precluded candidates from other Coast Guard REC facilities even though they were a precise match for the position in terms of their experience. A geographic limitation, however, is not inherently incompatible with an intent to expand the pool of well-qualified internal candidates. This court has previously concluded that 5 C.F.R. § 335.103(b)(2) provides that a vacancy announcement can be geographically limited so long as the area of consideration is sufficiently broad to ensure the availability of high quality candidates. The administrative judge recognized that it was entirely appropriate to use an announcement that would give the agency's internal candidates an opportunity to be considered for the position. Had the agency used this approach at the outset, the announcement would have been proper. It is only through the backdrop of the repeated postings and repostings that the announcements may have appeared at all suspicious—but Ms. Beatrez was not involved with those earlier postings. Her decision to issue the third vacancy announcement is consistent with her expressed intent to expand the announcement so that well-qualified merit promotion candidates at the place where the vacancy occurred could be considered. Ultimately, candidates from all three sets of announcements were considered.

Finally, to the extent that the Board is relying on Ms. Beatrez's decision to cancel the second set of vacancy announcements as circumstantial evidence of improper intent, Ms. Beatrez credibly explained: "I saw that there were just a limited number of applicants, most of which were applicants under the [DEU] or open competitive announcement, I made an assessment that the position was advertised in error so I cancelled that." It is undisputed that there were deficiencies in the first two sets of vacancy announcements and that re-announcing positions under such circumstances was a routine practice. The Board, in considering appropriate penalties, acknowledged this practice. It cited to Mr. Kogut's testimony stating that the Coast Guard frequently "reannounce[s] jobs to get the best quality candidates. . . . [Beatrez] would have seen this as something that was proper, appropriate versus inappropriate and wrong." *Id.* at 77.

In sum, most of the evidence discussed by the Board goes to CMDR O'Hare's improper intent and Mr. Lee's understanding of that intent. Much of the remaining evidence is at least as consistent with Ms. Beatrez having acted with an innocent intent as it was with her having intended to aid and abet CMDR O'Hare grant an unauthorized preference to Mr. Woodson. Admittedly, Ms. Beatrez testified that Ms. House had told her that CMDR O'Hare wanted to "try and reach Mr. Woodson." But given the above-described problems with the sufficiency of the circumstantial evidence used to infer Ms. Beatrez's intent, the Board's reasons for substituting its own credibility determinations for that of the administrative judge are not sufficiently sound. *See, e.g, Long*, slip op. at 7-8. Accordingly, the Board's decision does not survive substantial evidence review.

CONCLUSION

For the foregoing reasons the *Final Decision* is reversed insofar as it relates to Ms. Beatrez.

COSTS

Costs awarded to Ms. Beatrez.

**REVERSED-IN-PART**