**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GEORGE LEFEVRE,
               Appellant,

       v.

DEPARTMENT OF THE ARMY,
               Agency.

DOCKET NUMBER
DA-0752-19-0286-I-1

DATE: August 9, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Robert C. Seldon, Esquire, Washington, D.C., for the appellant.

Ashley M. Ludovicy, and Everett F. Yates, Esquire, JBSA-Fort Sam
    Houston, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the agency action reducing the appellant's grade and pay by involuntarily reassigning him from his position as a GS-0018-14 Safety and Occupational Health Manager to a GS-0018-13 Safety and Occupational Health

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Manager. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        The following facts are not materially in dispute. The appellant was previously employed as a GS-13 Safety and Occupational Health Manager at the agency's Medical Command (MEDCOM) headquarters Safety Management Office. Initial Appeal File (IAF), Tab 11 at 46. On December 19, 2016, the agency issued a vacancy announcement for a GS-14 Safety and Occupational Health Manager position at MEDCOM headquarters, under competitive merit promotion procedures. *See* IAF, Tab 9 at 50-53, 91. The merit promotion certificate of eligibles for the position was issued on January 10, 2017, and included 17 eligible candidates, but did not include the appellant. *Id.* at 69-73. The merit promotion certificate expiration date was January 24, 2017. *Id.* at 70. The appellant was not included on the certificate of eligibles because his self-assessment questionnaire score was below the cutoff score used to determine which applicants were included on the certificate of eligibles list. *Id.* at 69; *see*

IAF, Tab 9 at 114; Hearing Transcript (HT) at 325-27 (testimony of the appellant). A four-person selection panel was empaneled, and the candidates from the certificate of eligibles list were scored and ranked, but no interviews were conducted. IAF, Tab 9 at 75, 107. Another employee in the MEDCOM headquarters Safety Management Office, DG, received the highest score among the rated candidates and was informed by one of the selecting officials of the intention to select him for the position. *See id.* at 82, 102, 107, 109-11; HT at 159 (testimony of DG). Nevertheless, the Request for Personnel Action tracker for this vacancy announcement reflects that, on January 12, 2017, the certificate was returned with "no selection" made under the competitive merit promotion certificate, and all of the candidates on the merit promotion certificate of eligibles were eventually marked "NS," or "not selected." IAF, Tab 9 at 92; *see id.* at 70-74, 99.

¶3      On January 23, 2017, President Donald Trump issued a Presidential Memorandum directing agencies to implement a Federal civilian hiring freeze. *See Hiring Freeze*, *Memorandum for the Heads of Executive Departments and Agencies*, Memorandum No. 2017-01842, 82 Fed. Reg. 8493 (Jan. 23, 2017). Around this same time, after a number of interactions with DG that the panel members described as "bullying" and "unfavorable and unprofessional," the panel members began to reconsider their intention to select DG for the position. IAF, Tab 9 at 79, 82; HT at 266 (testimony of the selecting official); *id.* at 302-05 (testimony of selection panel member). On April 19, 2017, the selecting official contacted an agency Human Resources (HR) specialist to inquire into alternative options for filling the vacancy. *Id.* The selecting official noted that although he had made a selection, the selectee had not yet been offered the position. *Id.* Continuing, the selecting official stated that he wanted to "deselect that individual and relook" at the certificate of eligibles list, or pick a "by name" Veterans Employment Opportunities Act of 1998 (VEOA) candidate, if possible. *Id.*; *see id.* at 199. That same day, another panel member contacted the same

HR specialist and stated that the panel wanted to extend a job offer for the position to the appellant as a "non-competitive appointment-30% Veteran," and provided the HR specialist with a copy of the appellant's resume and his "Veteran letter." IAF, Tab 9 at 41-42. The email also noted that a waiver exempting the position from the hiring freeze had been requested and was awaiting approval. *Id.* at 42. On May 1, 2017, the Secretary of the Army granted the hiring freeze exemption request. IAF, Tab 10 at 7-15. On May 3, 2017, the agency offered the position to the appellant, which he accepted, and was promoted effective May 15, 2017. IAF, Tab 11 at 45.

¶4          On June 23, 2017, DG filed a complaint with the agency's Office of the Inspector General (OIG) alleging that the agency failed to follow MEDCOM Regulation 690-15 when it hired the appellant for the position, despite the fact that the appellant was not on the certificate of eligibles list and was not ranked as "best qualified" among the rated candidates, and because the selection decision was not properly paneled. IAF, Tab 9 at 112-13. After an investigation was conducted into the complaint, a Report of Investigation (ROI) was produced and forwarded to the MEDCOM Troop Commander with recommendations. *See* IAF, Tab 8 at 84-85; Tab 9 at 4-128; Tab 10 at 4-28.[2] In an October 16, 2017 memorandum, the Troop Commander declined to adopt some of the agency's OIG findings and instead substituted some of the findings with his own. IAF, Tab 8 at 83. Specifically, the Troop Commander found that the MEDCOM Safety Office engaged in the following prohibited personnel practices when it selected the appellant for the position: (1) violating 5 U.S.C. §2302(b)(12), which

---

[2] The agency's OIG determined that although there was an appearance that the appellant received an improper advantage in the hiring process, MEDCOM Safety leadership did not engage in a prohibited personnel practice. IAF, Tab 8 at 84; Tab 9 at 4-5. Further, it concluded that the hiring process and decision used to select the appellant violated the Merit Systems Principles and MEDCOM Regulation 690-15 due to the "hiring of an unqualified individual and lack of credited plan." IAF, Tab 9 at 7, 9.

prohibits taking or failing to take any personnel action that violates any law, rule, or regulation implementing or directly concerning the merit systems principles, by failing to follow two provisions of MEDCOM Regulation 690-15; and (2) violating 5 U.S.C. § 2302(b)(6), which prohibits granting any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment for the purpose of improving or injuring the prospects of any particular person for employment, by the selecting official's use of improper criteria for selecting the appellant for the position. *Id.* at 83. As a result of his findings, the Troop Commander recommended that the investigation be forwarded to the Deputy Chief of Staff, Quality and Safety "for appropriate corrective and/or disciplinary action." *Id.*

¶5    By a letter dated December 17, 2018, the agency proposed that the appellant be reduced in grade and pay from the GS-14 Safety and Occupation Health Manager position to his previous GS-13 position with the same title, due to an "erroneous promotion action that occurred due to a prohibited personnel practice." *Id.* at 70-75. The proposal noted that, as a result of the investigation into the circumstances surrounding the appellant's promotion, it was determined that the MEDCOM Safety Office "violated 5 U.S.C. § 2302, and failed to follow the provisions of MEDCOM Regulation 690-15" by failing to panel the appellant's hiring, and failing to use a crediting plan in determining the best qualified candidates for the position to which the appellant had been hired. *Id.* at 70. The proposal concluded by stating that the appellant's selection for the position "was the result of a prohibited personnel practice," and that the action was being proposed to promote the efficiency of the service. *Id.* at 71.

¶6    After considering the appellant's oral and written responses to the proposal, *see* IAF, Tab 1 at 28-67, by a letter dated March 26, 2019, the deciding official sustained the action reducing the appellant's grade and pay, effective April 14, 2019, *id.* at 11-27. The deciding official acknowledged that the appellant received the promotion "through no fault of [his] own," but determined that his

selection was "erroneous and the result of a prohibited personnel practice," and that allowing the appellant to remain in his position would be unfair to others who were disadvantaged by the selecting official's conduct. *Id.* at 11. The decision letter also noted that the action was taken "solely to promote the efficiency of the service." *Id.*

¶7 The appellant timely filed the instant appeal challenging the agency decision reducing him in grade and pay. IAF, Tab 1. The appellant argued that the deciding official erred in concluding that his selection was the product of a prohibited personnel practice, or that it violated provisions of MEDCOM regulation 690-15. *Id.* at 6. The appellant also argued that the decision was unsupported and did not promote the efficiency of the service, and that given the agency's acknowledgement that he had no role in the alleged prohibited personnel practice, the penalty was unreasonable and incompatible with the factors identified by the Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). *Id.* In a subsequent filing, the appellant also argued that the agency violated his due process right when the deciding official suggested that the appellant did not possess the requisite qualifications for the GS-14 position, without providing him advanced notice that his qualifications would be at issue. IAF, Tab 29 at 10-13; *see* IAF, Tab 18 at 13; Tab 24 at 4.

¶8 After holding the appellant's requested hearing, IAF, Tab 28, the administrative judge issued an initial decision reversing the agency action, IAF, Tab 34, Initial Decision (ID) at 1, 14. In the initial decision, the administrative judge made the following findings: (1) despite the agency's argument to the contrary, the Board had jurisdiction over the appeal; (2) the deciding official did not consider ex parte information in commenting on the appellant's qualifications, so the agency met its minimum due process obligation in taking the action against the appellant; and (3) the agency failed to meet its burden of proving the charge by preponderant evidence, because it failed to show that the appellant's promotion violated MEDCOM Regulation 690.15, or that his

promotion was the result of a prohibited personnel practice under 5 U.S.C. § 2302(b). ID at 5-14. Because the administrative judge concluded that the agency failed to meet its burden of proving the charge, he did not make any findings concerning whether the agency action promoted the efficiency of the service, or whether the penalty reducing the appellant's grade and pay was reasonable.

¶9 The agency has timely filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The appellant has filed a response in opposition to the petition for review, and the agency has filed a reply. PFR File, Tabs 5, 8.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10 On petition for review, the agency argues that the administrative judge failed to properly interpret MEDCOM Regulation 690-15 and did not give adequate deference to the agency's interpretation of the regulation, and erred in finding that the agency failed to prove that the appellant's promotion was the result of a prohibited personnel practice under 5 U.S.C. § 2302(b)(6). PFR File, Tab 1 at 4-25; Tab 8 at 5-10. Regarding its claim that the administrative judge failed to properly interpret MEDCOM Regulation 690-15, the agency argues that the administrative judge afforded too much weight to the testimony by the two hiring panel members (who the agency alleges were biased) and an employee who is not employed by MEDCOM regarding the correct interpretation of the regulation, while improperly discounting a contrary interpretation that was contained in the OIG report and offered by MEDCOM employees at the hearing. PFR File, Tab 1 at 9-13. The agency also argues that the administrative judge selectively applied canons of textual interpretation in reaching his decision, while disregarding the reasonable alternative interpretation offered by the agency. *Id.* at 13-15.

¶11 Regarding the administrative judge's finding that the agency failed to demonstrate that the appellant's promotion was the result of a prohibited personnel practice in violation of 5 U.S.C. § 2302(b)(6), the agency argues that it met its burden for proving such a claim as described by the Board in *Special Counsel v. Byrd*, 59 M.S.P.R. 561 (1993), *aff'd*, 39 F.3d 1196 (Fed. Cir. 1994) (Table). The agency also argues that the administrative judge failed to resolve conflicting testimony on this issue, and failed to make sufficient credibility determinations in accordance with the Board's decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), in reaching his determination.[3] PFR File, Tab 1 at 15-21.

We agree with the administrative judge's finding that the agency failed to prove that the appellant's promotion violated provisions of MEDCOM Regulation 690-15.

¶12 In the initial decision, the administrative judge concluded that the agency failed to demonstrate that the appellant's promotion to the GS-14 position violated paragraphs 7a(6)(b) and 7a(6)(c) of MEDCOM Regulation 690-15.[4] ID at 9-12. MEDCOM Regulation 690-15 is titled "Safety Career Program

[3] The agency has not challenged the administrative judge's finding that the Board has jurisdiction over this appeal, and the appellant has not challenged the finding that the deciding official did not violate the appellant's minimum due process right when he commented on the appellant's apparent lack of qualifications for the GS-14 position. *See* ID at 5-8. Accordingly, we have not addressed either argument here.

[4] In the initial decision, the administrative judge rejected the agency's argument, raised for the first time in its written closing brief, that the appellant's promotion violated a separate provision of MEDCOM Regulation 690-15, ¶ 7a(5), mandating that positions be announced "Army-wide and [] remain open at least 14 days." ID at 12 n.8; *see* IAF, Tab 17 at 47; Tab 30 at 7. The administrative judge determined that, because this allegation was not contained in the proposal or decision letter, sustaining the agency action on this basis would violate the appellant's due process right to notice and an opportunity to respond to the charges against him. ID at 12 n.8; *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (holding that tenured public employees have a constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond). The agency has not challenged this finding on review and we see no reason to disturb it.

Management," and the purpose of the regulation is to provide guidance on training requirements, minimum qualifications, and the applicable knowledge, skills, and abilities for staffing positions in the GS-0018 Safety and Occupational Health Manager/Specialist position series. IAF, Tab 17 at 45. The specific provisions the agency alleged the appellant's promotion violated are identified as follows:

> 7. **Procedures**. For hiring/filling job series 0018 vacancies—
>
> The occupational series 0018 (Safety and Occupational Health) is designated as an Army mission critical occupation (MCO). Hiring actions will be initiated with a MEDCOM Safety approved position description within 30 days of vacancy.
>
> > *a*. [Safety Career Program 12 (CP-12)] placement and promotion.
> >
> > * * *
> >
> > (6) Recruitment. All positions GS-05 through GS-12 (except interns) will be filled through registrants in the appropriate DA centralized referral inventory or local merit procedures (see AR 690-950, chapter 2).
> >
> > * * *
> >
> > > (*b*) All safety positions will be paneled by the HQ MEDCOM Safety Management Office.
> > >
> > > (*c*) The MEDCOM Safety Office will develop a crediting plan to be used in determining a list of "best qualified" from the list submitted by the CPAC. Once the "best qualified" list is developed with candidates, the hiring authority may interview but must select from the "best qualified" list.

*Id.* at 46-47.

¶13 In the decision reducing the appellant's grade and pay, the agency concluded that the hiring panel members violated paragraphs 7a(6)(b) and 7a(6)(c) when they promoted the appellant using a non-competitive 30% or more disabled veteran hiring authority (5 U.S.C. § 3112; 5 C.F.R. §§ 315.707, 316.402(b)(4)), without paneling the decision pursuant to paragraph 7a(6)(b), and without using a crediting plan or selecting the appellant off of the "best qualified"

list pursuant to paragraph 7a(6)(c). IAF, Tab 1 at 18-21. The failure to comply with the requirements identified in paragraphs 7a(6)(b) and 7a(6)(c) and to instead select the appellant "by name" from the non-competitive 30%+ disabled veteran certificate, the agency reasoned, resulted in the appellant's improper selection for the GS-14 position, and consequently, a violation of 5 U.S.C. § 2302(b)(12). *Id.* at 18.

¶14    In challenging the agency's claim that his promotion violated these provisions, the appellant argued that the language in paragraphs 7a(6)(b) and 7a(6)(c) only applied to positions rated GS-05 through GS-12, and did not apply to the GS-14 position to which the appellant was promoted. IAF, Tab 29 at 6-7. In the initial decision, the administrative judge determined that the agency failed to prove that the appellant's promotion violated these provisions, agreeing with the appellant's argument that the regulatory language applied only to GS-05 through GS-12 positions, and not to the GS-14 position to which the appellant was promoted. ID at 10-12. In reaching this determination, the administrative judge relied on the testimony of the senior safety advisor who had experience with the drafting and promulgation of the regulation, and testimony from the deciding official for the reassignment action. ID at 10-11 (citing IAF, Tab 28, Hearing Compact Disc (HCD) (testimony of the senior safety advisor); *id.* (testimony of the deciding official)); *see* HT at 86-87 (testimony of the deciding official), 236-39 (testimony of the senior safety advisor); *see also* HT at 280-81 (testimony of the selecting official).

¶15    The administrative judge also relied on his reading of the regulation "as a whole," applying canons of textual interpretation to conclude that the interpretation offered by the appellant and senior safety advisor was the most reasonable. ID at 10-11. Specifically, the administrative judge noted that the language contained in the "Recruitment" heading of paragraph 7a(6) identified "[a]ll positions GS-05 through GS-12," and so it was reasonable to conclude that the nested subparagraphs below paragraph 7a(6) also applied to "all positions

GS-05 through GS-12."  ID at 10 (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 184 (2012) ("The title and headings are permissible indicators of meaning.")).

¶16    On review, the agency restates its argument that, despite the reference to GS-5 through GS-12 positions in the paragraph 7a(6) heading, the language in paragraph 7a(6)(b) identifies "all safety positions," and so that provision should apply to all positions in the GS-0018 position series, including the GS-14 position the appellant was promoted to, without regard to the grade of the position.  PFR File, Tab 1 at 13-14; Tab 8 at 5-8.  The agency argues that the clear intent of the regulation was to provide guidance on hiring actions for all positions in the GS-0018 job series, and so a reasonable interpretation of the regulation would not limit application of paragraphs 7a(6)(b) and 7a(6)(c) only to hiring actions for GS-5 through GS-12 positions.  PFR File, Tab 1 at 14-15.

¶17    We agree with the administrative judge's finding in this regard. Fundamental rules of statutory and regulatory construction dictate that a regulation or statute should be construed "so as to avoid rendering superfluous" any of its language, and a statute or regulation's caption or heading can be "a useful aid in resolving" potential ambiguity in the accompanying text.  *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 388–389 (1959); *Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 112 (1991).  Additionally, titles and section headings "'are tools available for the resolution of a doubt about the meaning of a statute.'"  *Porter v. Nussle*, 534 U.S. 516, 528 (2002); *see also* NORMAN J. SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:14 (7th ed. 2007) (noting that "the headings may serve as an aid" in determining the legislative intent of an enacted statute).  Here, the language in paragraph 7a(6) clearly identifies that the language in the paragraph of that heading applies to "[a]ll positions GS-05 through GS-12 (except interns)."  IAF, Tab 17 at 46.  By extension, the lettered subparagraphs (a) through (f) nested under paragraph 7a(6)

would be constrained by that same language in the paragraph 7a(6) heading.  *See id.* at 46-48.

¶18      This conclusion is also consistent with the testimony provided by the senior safety advisor who reviewed the regulation when it was drafted, as well as a number of the other agency witnesses.  *See* HT at 86-87 (testimony of the deciding official); *id.* at 235-39 (testimony of the senior safety advisor); *id.* at 280-81 (testimony of the selecting official) .  Although the agency points to other officials who offered a possible alternative interpretation of the regulation, the administrative judge made reasoned credibility determinations in relying on the testimony of the senior safety advisor, which we credit.  ID at 10-11 (citing *Hillen*, 35 M.S.P.R. 453, 458 (1987)); *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (noting that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so.); *Vicente v. Department of the Army*, 87 M.S.P.R. 80, ¶ 7 (2000) (stating that where there is conflicting testimony such that it is impossible to believe the testimony of both witnesses, an administrative judge must make credibility determinations to properly resolve the issue).  Accordingly, we discern no reason to disturb this finding on review.  *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 9 (2016) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (same).

<u>We agree with the administrative judge's finding that the agency failed to establish that the appellant's promotion was the result of a prohibited personnel practice under 5 U.S.C. § 2302(b).</u>

¶19    The agency also argues that the administrative judge erred in concluding that it failed to prove that the appellant's promotion violated 5 U.S.C. § 2302(b)(6), which prohibits the granting of "any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment." PFR File, Tab 1 at 15-21; Tab 8 at 8; *see* ID at 12-14. Specifically, the agency argues that the administrative judge identified the correct standard for proving a violation under section 2302(b)(6), identified by the Board in *Byrd*, 59 M.S.P.R. 561, but incorrectly applied the standard in finding no violation. PFR File, Tab 1 at 15-17.

¶20    In the initial decision, the administrative judge stated that to find a violation of 5 U.S.C. § 2302(b)(6), the Board's decision in *Byrd* required that the agency prove the following: (1) that the relevant management official had authority to take a personnel action; (2) the official granted a preference or advantage not authorized by law, rule, or regulation; and (3) the official granted the preference to a particular individual with the purpose of improving his or her prospects for employment. ID at 12 (citing *Byrd*, 59 M.S.P.R. at 570). The administrative judge concluded that absent evidence of intentional conduct undertaken by the official for an improper purpose, there is no violation of section 2302(b)(6). ID at 12.

¶21    In concluding that the agency failed to meet its requisite burden, the administrative judge relied on the testimony from an HR specialist stating that the selecting official's request to abandon the merit promotion certificate in favor of selecting the appellant "by name" using the disabled veteran hiring authority at 5 U.S.C. § 3112 was a "routine personnel action" that did not require further

approval, suggesting that there was nothing out of the ordinary about the selecting official's request and decision. ID at 13; *see* IAF, Tab 23 at 30. The administrative judge also cited the testimony from two of the selection panel members, the senior safety advisor, and the HR specialist stating that the appellant had the qualifications and temperament to complete the duties of the GS-14 position. ID at 13; *see* HT at 240-41 (testimony of senior safety advisor); *id.* at 302-03 (testimony of panel selecting official); HT at 323-24, 335-37 (testimony of another panel member); IAF, Tab 23 at 43 (deposition testimony of HR specialist). Finally, the administrative judge acknowledged the testimony from one of the employees who was not selected for the position, stating that he was told by the selecting official that the appellant was selected because the selecting official was "just simply taking care of his people," during a telephone conversation. ID at 12-13; HT at 114-15 (testimony of non-selected applicant).

¶22 Because the decision to switch from the merit promotion list to the disabled veteran hiring authority was routine, and because the relevant agency officials determined that the appellant was qualified for the position, the administrative judge reasoned, there was no improper purpose in the decision by the selecting panel members to hire the appellant "by name" using the disabled veteran hiring authority. ID at 12-14. Addressing the testimony that the selecting official was taking care of "his people" by selecting the appellant, the administrative judge noted that the selecting official denied making that statement at the hearing, and concluded that even if the selecting official did make the statement, the administrative judge interpreted the statement as referring to a preference for hiring an employee that was "familiar with the agency's operations," including both the appellant and DG, and that such a preference was not impermissible. ID at 13; *see* HT at 279 (testimony of selecting official).

¶23 On review, the agency restates its argument that it proved that the selecting official granted the appellant a preference or advantage that was not authorized by law, rule, or regulation, that he did so with the intent to provide the appellant

with preferential treatment, and that he did, in fact, ultimately provide the appellant with preferential treatment. PFR File, Tab 1 at 15-21. The agency notes that the appellant was ultimately selected for the position even though he did not make the competitive certificate of eligibles list, which disadvantaged the 16 other applicants on the list, including the top ranked candidate, DG, and cites the Board decision in *Avery v. Office of Personnel Management*, 94 M.S.P.R. 212 (2003) to support its argument that the appellant's prospects were improved to the detriment of the 17 other applicants. *Id.* at 16-17.

¶24     The agency also cites *Special Counsel v. Lee*, 114 M.S.P.R. 57 (2010) for the proposition that a violation of section 2302(b)(6) still occurs where a hiring authority that would be valid under other circumstances is used in invalid matter, which it argues occurred here. *Id.* at 17. To support its argument that the selecting official intended to provide an advantage to the appellant, the agency points to the actions by the selecting official deselecting DG, requesting another authorized way to select the appellant, and selecting the appellant "by name" without reviewing the rest of the eligible candidates on the 30% or more disabled veteran referral list, and without re-announcing the position. *Id.* The agency also points to the testimony by a non-selected candidate stating that he was "just simply taking care of his people" as additional evidence of the selecting official's intent to advantage the appellant. *Id.* at 18. Further, the agency argues that the administrative judge failed to make necessary credibility findings regarding the conflict between the testimony of the non-selected candidate stating that the selecting official told him he was taking care of "his people" and the selecting official's testimony denying making the statement. *Id.* at 18-19. Finally, the agency argues that the administrative judge failed to acknowledge the clear bias by the senior safety advisor, the selecting official, and the selecting panel member in making his credibility determinations. *Id.* at 18-21; PFR File, Tab 8 at 6-7.

¶25     Regarding the agency's argument that, pursuant to *Byrd*, *Avery*, and progeny, it proved that the other applicants were disadvantaged and the appellant

was advantaged by the selecting official's actions, we agree with the administrative judge's conclusion that the agency failed to demonstrate that the selecting official's decision to hire the appellant "by name," using the 30%+ disabled veteran hiring authority of 5 U.S.C. § 3112, in lieu of the competitive merit promotion certificate, was undertaken with an improper purpose. *See* ID at 13-14. As an initial matter, *Special Counsel v. Lee*, one of the cases cited by the agency to support its argument, was reversed in part by the U.S. Court of Appeals for the Federal Circuit in a subsequent decision.[5] *Beatrez v. Merit Systems Protection Board*, 413 F. Appx. 298 (2011); *see Pitsker v. Office of Personnel Management*, 89 M.S.P.R. 252, ¶ 4 (2001) (finding it well settled that decisions of the Federal Circuit constitute precedent that is binding on the Board).

¶26    Additionally, *Byrd* and *Avery* are distinguishable. *Avery* merely stands for the proposition that the granting of additional points for preference-eligible veterans during a competitive hiring process does not constitute a prohibited personnel practice under 5 U.S.C. § 2302(b)(6), an issue that is not relevant in this case. *Avery*, 94 M.S.P.R. 212, ¶ 6. Further, as the administrative judge correctly concluded, *Byrd* is inapposite and distinguishable on its facts. *See* ID

---

[5] In *Beatrez*, the Federal Circuit reversed the Board decision reversing the administrative judge's finding that an HR specialist violated section 2302(b)(6) by intentionally assisting in the granting of an illegal preference for another employee. *Id.* at 298, 304. In the Board's decision, it declined to defer to the administrative judge's credibility findings concluding that Beatrez did not intend to violate section 2302(b)(6) by granting an illegal preference, and instead substituted its own credibility determinations to establish the requisite intent. *Id.* at 304-05. The Federal Circuit reversed the Board on appeal, concluding that the Board's reason for substituting its own credibility determinations were not sufficiently sound to overturn the administrative judge's finding that Beatrez lacked the requisite intent, concluding that much of the evidence the Board relied on had no bearing on Beatrez's intent and that the remaining evidence in the record was at least as consistent with Beatrez having an innocent intent as it was with her having a guilty one. *Id.* at 306. Indeed, the Federal Circuit's decision in *Beatrez*, overturning the Board and deferring to the administrative judge's credibility-based finding that there was insufficient evidence of improper intent, is consistent with our conclusion here.

at 14 n.11.  In *Byrd*, the Office of Special Counsel (OSC) brought a disciplinary action against the management officials in that case, charging them with violating, *inter alia*, 5 U.S.C. § 2302(b)(6) and (b)(11),[6] based on the officials' unauthorized actions directed at hiring a favored candidate due to her "political connections" to White House officials.  *Byrd*, 59 M.S.P.R. at 563, 572.  The actions taken by the management officials in *Byrd* to ensure the candidate's selection included the following:  pre-selecting the candidate for the position before the merit promotion certificate had even closed; unlawfully using an unauthorized temporary hiring authority without seeking necessary approval from the Office of Personnel Management and, even though the hiring authority significantly reduced the size of the applicant pool, increasing the grade level, reducing the geographical area, and reducing the number of days the vacancy announcement remained open in order to further restrict the applicant pool; declining to interview any candidates for the position; unlawfully failing to consider the application of a 30% disabled veteran; and failing to consider the other eligible candidates on the temporary certificate, even though one of the candidates was arguably more qualified than the selectee.  *Id.* at 565-69, 571, 577.  The Board ultimately concluded that without the "extraordinary actions" taken by the responsible agency officials, the selectee "could not even have been considered for the position," and that the clear purpose, as stated by the responsible agency officials, was to place the selectee on the agency's employment rolls "by a certain date."  *Id.* at 569.

¶27      In this case, by contrast, 5 U.S.C. § 3312, the hiring procedure the agency used to select the appellant for this position, was lawful and authorized by HR officials; the decision to switch hiring authorities was "routine"; the selecting

---

[6] The language of 5 U.S.C. § 2302(b)(11) that was in effect when *Byrd* was issued is identical to the current version of 5 U.S.C. §2302(b)(12).  *Compare* 5 U.S.C. §2302(b)(12), *with Byrd*, 59 M.S.P.R. at 579.  The statute was subsequently amended and the sections were renumbered.

officials sought, and received, explicit authority to use the alternative hiring procedure from a knowledgeable HR specialist; the selecting officials only decided to switch hiring authorities after they encountered issues with the candidate they originally intended to select; the appellant was regarded as qualified for the position by all of the agency officials who testified; and the identified reasons for selecting the appellant—because he had the correct qualifications, fit, and discipline for the job—were not improper. *See* ID at 13-14; IAF, Tab 9 at 79, 82; Tab 23 at 30-31 (deposition testimony of HR specialist); HT at 136, 231-32 (testimony of the senior safety advisor); *id.* at 267-69, 274, 289-90 (testimony of the selecting official); *id.* at 307-09 (testimony of selection panel member); *see also* 5 C.F.R. § 335.103(b)(4) (stating that under merit promotion plans, agency selection procedures "will provide for management's right to select from other appropriate sources, such as reemployment priority lists, reinstatement, transfer, *handicapped, or Veteran Recruitment Act eligibles*. . .") (emphasis added). Although the agency attempts to analogize the selecting official's stated purpose of taking care of "his people" to the improper purpose identified by the Board in *Byrd*, the comparison falls short. *See* PFR File, Tab 1 at 19. As the administrative judge noted, the selecting official's preference for an employee within the MEDCOM Safety Office, with whom he would have been familiar and best able to assess prior performance and abilities, does not compare to the impermissible purpose identified in *Byrd* of pre-selecting a candidate who offered little more than "political connections" to the White House. *See* ID at 13-14; *Byrd*, 59 M.S.P.R. at 572. The sheer breadth and degree to which the responsible agency officials in *Byrd* took action to ensure the selectee's selection for the position, despite her clearly inadequate qualifications, does not offer a meaningful comparison to the facts at issue in this appeal.

¶28 Finally, regarding the agency's specific challenges to the administrative judge's credibility determinations, we see no reason to disturb those findings.

Although we agree with the agency that the administrative judge did not make specific credibility findings resolving the dispute between the non-selected candidate and the selecting official concerning whether or not the selecting official stated that he was "just simply taking care of his people," the administrative judge also concluded that even if the selecting official made such a statement, it was insufficient to establish an improper purpose, with which we ultimately agree. *See* ID at 13-14. Regarding the agency's assertion that the administrative judge failed to address the senior safety advisor's specific bias toward the MEDCOM Safety program, the administrative judge did consider whether she generally had any bias and concluded that she did not. ID at 10 (citing *Hillen*, 35 M.S.P.R. at 458). Regarding its argument that the administrative judge failed to make specific credibility findings concerning the potential biases of the selecting official and selection panel member even though he found that DG's testimony was biased, an administrative judge's failure to discuss each *Hillen* factor does not mean that he did not consider each factor. *Stein v. U.S. Postal Service*, 57 M.S.P.R. 434, 440 (1993). We have considered the agency's claim that these witnesses were biased against DG and so their testimony should not be credited, but conclude that a different outcome is not warranted. PFR File, Tab 1 at 18-20. The testimony these witnesses offered was consistent with the testimony offered by the other witnesses, and was consistent with the documentary record as a whole, as outlined above.[7] For the foregoing

---

[7] As the agency notes in its petition for review, there is a discrepancy concerning whether the applicants for the merit promotion certificate of eligibles were de-selected on January 12, 2017, as reflected on the Request for Personnel Action tracker, the auditing statement, and the testimony of the HR specialist, or in April 2017, as reflected in the selecting official's testimony. Petition for Review (PFR) File, Tab 1 at 20; *see* IAF, Tab 9 at 74, 92; Tab 23 at 22-23; HT at 268-69; ID at 3. However, we conclude that this apparent discrepancy is immaterial to the outcome of this appeal, because the timing of the de-selection decision has no bearing on our determination that the appellant's promotion was not the result of a prohibited personnel practice, because the

reasons, we deny the petition for review and affirm the initial decision, reversing the agency action reducing the appellant's grade and pay.

## ORDER

We ORDER the agency to cancel the action reducing the appellant's grade and pay, and to restore him to the Safety and Occupational Health Manager, GS-0018-14 position, effective May 26, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

---

selecting official's reasons for selecting the appellant for the position were not impermissible.

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶33     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. [5 U.S.C. § 7702](b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under [5 U.S.C. § 2302](b)(8) or other protected activities listed in [5 U.S.C. § 2302](b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must <u>receive</u> your petition for

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on

review within **60 days** of <u>the date of issuance</u> of this decision.  <u>5 U.S.C.</u> <u>§ 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for
                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.